## BOYD'S APPEAL.

A Court of Equity has not jurisdiction to determine which of two parties claiming land through the same will of a common ancestor is entitled to the property.

Appeal from the Common Pleas of Chester County. In Equity. No. 1 January Term, 1881.

George Correy by his will; dated June 13, 1781, devised as follows; *inter alia:*

"I leave and bequeath to my son, Robert Correy, the plantation I now live upon * * * with all the housings, goods and waters to be by him and his heirs enjoyed forever, after him his oldest son, if no son his eldest daughter and their heirs.

In 1795 Robert Correy's oldest son, George, died without issue before his father. In 1797 Robert Correy died, leaving to survive him Mary, his oldest child then living (under whom the appellants claim) and William K. Correy, the next oldest child (under whom appellees claim). The appellants brought a bill in equity against appellees to settle this disputed question of title. The appellees demurred; and the Court sustained the demurrer in the following opinion, per

CLAYTON, J:

Artificial rules of construction should not be permitted to interfere with the manifest meaning of a will, but they are absolutely necessary and must be strictly followed when the

language employed by the testator is so obscure as to render his meaning, when read by ordinary rules, a mere guess. In such cases the certainty of title depends upon following the strict artificial rules of interpretation. The first and most important rule is to let the whole will be read together, so as to give, if possible, a consistent meaning to any word. No word or phrases are to be stricken out if any consistent meaning can be extracted from the instrument by retaining them. Where there is absolute inconsistency, the words or phrases last used are to be adopted. To give the will in the case in hand the constructions contended for by the plaintiff, requires us to strike out the following entire sentence: *"to be by him and his heirs forever enjoyed."* The words of the devise are as follows: "I leave and bequeath to my son, Robert Correy, the plantation I live upon, * * * being something over two hundred acres in both, with all the housings, goods and waters *to be by him and his heirs enjoyed forever*, after him his oldest son, if no son, his daughter and her heirs." Robert's oldest son was George who died before his father; his oldest daughter was Mary. She survived her father, and under her the plaintiff claims the fee.

If the testator intended that his estate should rest for life in Robert, and at his death his oldest son, *provided* said first born should survive his father, but if he should die before his father, then whether he had other sons or not living at his death, the estate should go to his oldest or first-born daughter, they are entitled to the estate. Can such a meaning by any reasonable construction be given to the will? If George, the eldest son of Robert, had been living at his grandfather's death, and he was intended as the *only* son, who, by any possibility, should succeed to the estate, it is quite obvious that his estate would be a *vested* remainder, and the limitation over to his oldest daughter would be senseless. That, therefore, could not have been his meaning. He must have intended the remainder to Robert's oldest son to be *contingent* upon him having a son living at his death, in which event his intention was that the oldest one then living should succeed to the estate; but if no son should be then living, then the estate was to go to the oldest daughter then living. If this was his

meaning, then Wm. K. Correy's oldest son living at the time of his father's death, was clearly entitled to the estate, whatever it was, fee tail or fee simple. If it was a fee tail, having been duly barred, the fee simple is now in the defendants. If a fee simple the proceedings to bar the supposed entailment were but cautionary ; Taylor vs. Taylor, 13 P. F. S., 481, cited by the plaintiffs as sustaining their bill has nothing to do in this case. The word issue in that case was used in such a way as to clearly indicate that it did *not* mean heirs of the body. It meant children, because it refers to issue living at the time of the testator's death. This takes from it all that could constitute an intention to create an estate tail. Besides the estate was granted to the issue of the testator, their heirs and *assigns*, the word "assigns" being inconsistent with a fee tail.

The devise in the present case, stripped of all its verbiage, may be read as follows: I devise my plantation, &c., to my son George and the heirs of his body forever, should he leave no son the eldest daughter should take the estate in tail female. This devise would vest a fee tail in the devisee which could be barred by proceedings under the statute. By constructing the testator's language in accordance with the rules of common law descent, we give to every word a consistent meaning. One of these rules prefers males to females, this, in Pennsylvania only applies to estates tail, the limiting, therefore, of the estate tail in his mind, for, another rule of descent is that the oldest male should be preferred, and females shall take altogether. If the testator intended to give a life estate to Robert, and a fee in his oldest son or daughter as the case might be, why did he employ the words, *to be by him and his heirs enjoyed forever*? If, on the other hand, he intended to vest a fee simple in Robert why did he devise his *oldest* son to succeed him and, in default of an oldest son, his oldest daughter? If he intended a life estate to the father and a fee in the children, why name the oldest son and daughter? The only consistent answer is that he intends to create a fee tail. He must be presumed to be familiar with the common rules of descent, and that in Pennsylvania they only apply to estate tail. This was his reason for naming the oldest son Robert.

He knew that the daughters took altogether, this would or might destroy the unity of the entailment, he, therefore, directed that the default of a son, the *oldest* daughter should be the heir in tail. His intention, therefore, was, 1st—to create a fee tail generally. 2nd—If no male issue, in order to preserve the estate of a whole, then a fee tail female in Robert's oldest daughter. Her entail was, therefore, a contingent remainder depending upon the failure of male issue of the body of the first taker. As the first taker had issue of his body, male, to wit: William K. Correy, under whom the defendants claim, it follows that the eldest daughter, under whom the plaintiffs claim, took no estate, and, therefore, the plaintiffs have nothing to sustain the bill.

But if we construe the words of the will as vesting a life estate in Robert, with remainder in his heirs, or the heirs of his body, then the rule in Shelly's case will give him the whole estate either in fee or in tail as the case may be.

The effect is the same if we construe the devise as a life estate to Robert with concurrent contingent remainders in his oldest son and daughter. The first contingency have happened, the estate has vested in W. K., the oldest son. There may, also, be a distinction between the words *eldest* and *oldest*. The former meaning the first-born, the latter the oldest living child. It will be observed the testator used the word *oldest*, which, unexplained, means the oldest living son at the time of testator's death, and can only apply to William K.

It is impossible to adopt the construction contended for by the plaintiff without striking from the will its most important sentence—which, of course, cannot be done.

The demurrer is sustained.

Bill dismissed with costs.

---

Boyds then appealed from the decree.

*Charles H. Pennypacker, Esq.*, for appellants, cited Rapp vs. Rapp, 6 Pa., 45 ; Eichelberger vs. Barnitz, 9 Watts, 450 ; Langeley vs. Heald, 7 W. & S., 98 ; Rex's Estate, 1 Brew,

431; Fahrney vs. Holsinger, 65 Pa., 388; Johnson vs. Currin, 10 Pa., 500.

*A. P. Reid, R. E. Monaghan and Wm. M. Hayes, Esqs.,* *contra,* argued that a Court of Equity has no jurisdiction; North Pa. Coal Co. vs. Snowden, 42 Pa., 488; Smith vs. Moyer, 1 Leg. Gaz. Rep., 86; Loomis vs. Loomis, 27 Pa., 233; Erie Canal vs. Lowrie, 5 Clark, 464; Norris' Appeal, 64 Pa., 275.

The Supreme Court affirmed the decree of the Common Pleas on April 1st, 1881, in the following opinion:.

PER CURIAM:

We think the Court below had no jurisdiction of this bill. It was a mere ejectment bill and the plaintiff had an ample and adequate remedy at law. It is unnecessary then to consider the question of law arising upon the construction of the will of George Correy.

Decree affirmed and appeal dismissed at the costs of the appellants.